ANGELO TESTA, petitioner-respondent,

*v.*

MARY TESTA, defendant-appellant.

[Submitted May term, 1940. Decided October 10th, 1940.]

*Mr. Benjamin Gross* and *Mr. Frank V. Introcaso,* for the petitioner-respondent.

*Mr. Myron E. Ackron* and *Mr. Ernest C. Gerardo,* for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

This is an appeal from a decree *nisi* divorcing the petitioner and the defendant upon the ground of adultery. The decree incidentally awards custody of the children and maintenance money, but the appeal goes only to the divorce.

The record presents an unusual situation. The parties have been separated for about six years. Approximately three years ago the husband sued the wife for divorce on the ground of desertion, and the petition was dismissed. The guilty act charged in this case is said to have been committed with one Ulesky on February 2d, 1937, in the front room of defendant's beauty parlor, facing the street, on the ground floor of the building and to have been observed by the defendant and his witnesses from the street through the front window by the illumination of a flashlight. The witnessing of the act is said by the petitioner to have been the culmination of an espionage extending over a period of five or six months, during which the petitioner and his witnesses followed the defendant two or three, and sometimes more, nights each week. The testimony was taken before Advisory Master

Child who died before rendering an opinion, although he had written a short, unfiled memorandum of a half dozen lines stating his conclusion that the defendant had committed adultery as charged. Following Mr. Child's death and, as the respondent asserts, without knowledge of the purport of that memorandum, the solicitors for the parties signed a stipulation on November 30th, 1938, that "the conclusions completed by the former Advisory Master Child be filed" and that "an order of re-reference in this cause be made directing that the decree be advised by the advisory master in accordance with said conclusions so completed by the said Advisory Master Child," and the parties themselves, on January 7th, 1939, signed a stipulation consenting and agreeing to the one which the solicitors had signed and further consenting that "an order of reference in this cause be made directing that the decree be advised by the advisory master in accordance with said conclusions so completed by the said Advisory Master Child." An order of re-reference, dated December 5th, 1938, and filed two days later, ordered that the cause be referred to Advisory Master Grosman to file the conclusions of Mr. Child and advise what decree should be made and filed thereon, the right of appeal being reserved to both parties. The next step in the cause appears to have been taken on February 9th, 1939, when the defendant filed an affidavit by Thomas Esposito, one of the petitioner's witnesses to the alleged act of adultery, stating that although he was with the petitioner and other persons at the location on the night of February 2d, 1937, he did not see an act of adultery committed, that two of the petitioner's witnesses who had testified that they were present and saw the act were not present and that Esposito had falsely testified on subornation of the petitioner and on the latter's promise to pay the sum of fifty dollars. An order issued directing the petitioner to show cause why, on that account, there should not be a rehearing, and on the return day the petitioner submitted a further affidavit by Esposito wherein the latter recanted his former charges of falsehood, whereupon the advisory master caused a reference to be made to a special master to take "testimony concerning the truth of said affidavit." Following the taking

of testimony the special master reported that in his opinion a promise of compensation was the inducing factor which caused Esposito to testify in the first instance, that the failure to pay caused him to change the story, that a further financial arrangement resulted in the repudiation of the affidavit and that the testimony was without value. The special master concluded with these words: "I therefore report that his [Esposito's] testimony given before the late Advisory Master Child was false and was induced by a promise of reward." The advisory master concluded that inasmuch as there were witnesses other than the said Esposito who testified to the alleged act of adultery there should be a decree awarded the petitioner for the cause aforesaid. The appeal is from that decree.

We express no opinion on the legal effect of the unfiled memorandum signed by the late Advisory Master Child, or of the stipulations entered into by the parties and their respective solicitors or of the limited form in which the order of re-reference was phrased. The story told by the petitioner and his witnesses is not, on its face, wholly probable. The conclusions reached by Mr. Child, the only judicial officer who heard and observed the witnesses in the main cause, were written in ignorance of the attack upon the veracity of one of petitioner's witnesses and did not weigh the effect of the denouement upon the credibility of petitioner's proofs. Advisory Master Grosman considered that, notwithstanding the elimination of Esposito, the testimony given by the remaining witnesses was sufficient to sustain the petitioner's cause. But, as we have observed, that advisory master had only the printed page upon which to rely for his impressions of the witnesses and their testimony. The report of the special master following the testimony taken under the rule places the petitioner in the position of having induced false testimony by the promise of a reward. Thus, petitioner's whole case is thrown into a shadow.

In the present posture of the case we are not satisfied that the petitioner succeeded in carrying the burden of proof; yet, in view of Mr. Child's death and the consequent confusion, we think that if the petitioner desires to press his

cause there should be a new order of reference without the limitations contained within that of December 5th, 1938, and that the entire case, including the taking of the testimony anew in open court, should be reheard. To that end the decree under review will be reversed, and the record remanded to the Court of Chancery for such action thereon as is not inconsistent with this opinion. Costs to abide the ultimate event.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, PORTER, DEAR, WELLS, WOLFS-KEIL, RAFFERTY, HAGUE, JJ. 13.